DAVID SPIVAK (SBN 179684)
        david@spivaklaw.com
CAROLINE TAHMASSIAN (SBN 285680)
        caroline@spivaklaw.com
THE SPIVAK LAW FIRM
16530 Ventura Blvd, Suite 312
Encino, CA 91436
Telephone:  (818) 582-3086
Facsimile:   (818) 582-2561

Attorneys for Plaintiffs THE ESTATE OF DONALD HARRINGTON, EDWIN
AYALA, ERIC SCOTT POWELL, EMILIO VAZQUEZ, PATRICK GATSON,
ANTHONY BRYANT, JAMAR EVANS, and JAMES WILLIAMS
(Additional attorneys for the Plaintiffs on following page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF DONALD HARRINGTON, EDWIN AYALA, ERIC SCOTT POWELL, EMILIO VAZQUEZ, PATRICK GATSON, ANTHONY BRYANT, JAMAR EVANS, and JAMES WILLIAMS, on behalf of themselves, all others similarly situated, and the general public, and as an "aggrieved employee" on behalf of other "aggrieved employees" under the Labor Code Private Attorneys General Act of 2004, | Case No.:  2:15-cv-01419-MWF-AS |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Filed Concurrently with Declarations of Donald Harrington, Edwin Ayala, Eric Scott Powell, Emilio Vazquez, Patrick Gatson, Anthony Bryant, Jamar Evans, and James Williams; Declarations of attorneys David Spivak, Shaun Setareh, and Louis Benowitz; Declarations of Brian Kriegler and V. Paul Herbert; and, [Proposed] Order] |
| *Plaintiffs*, | |
| vs. | |
| MARTEN TRANSPORT, LTD., a Delaware corporation; and DOES 1-50, inclusive, | Date:       August 27, 2018<br>Time:       10:00 a.m.<br>Courtroom:  5A<br>Judge:      Hon. Michael W. Fitzgerald |
| *Defendants*. | |

## ADDITIONAL ATTORNEYS FOR PLAINTIFFS

SHAUN SETAREH (SBN 204514)
       shaun@setarehlaw.com
H. SCOTT LEVIANT (SBN 200834)
       scott@setarehlaw.com
SETAREH LAW GROUP
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California  90212
Telephone:  (310) 888-7771
Facsimile:   (310) 888-0109

LOUIS BENOWITZ (SBN 262300)
       Louis@benowitzlaw.com
LAW OFFICES OF LOUIS BENOWITZ
9454 Wilshire Boulevard, Penthouse Floor
Beverly Hills, California 90212
Telephone: (310) 844-5141
Facsimile:   (310) 492-4056

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on Monday, August 27, 2018, at 10:00 a.m., or as soon thereafter as counsel may be heard in courtroom 5A, at above-entitled court, located at 350 West First Street, Los Angeles, California 90012, Plaintiffs the Estate of Donald Harrington, Edwin Ayala, Eric Scott Powell, Emilio Vazquez, Patrick Gatson, Anthony Bryant, Jamar Evans, and James Williams ("Plaintiffs"), on behalf of themselves and all others similarly situated, will and hereby do move this Court for an order certifying this action to proceed as a class action under Fed. R. Civ. P. 23.

During the relevant time period, Defendant Marten Transport, LTD (hereafter referred to as "Defendant") failed to provide its drivers with meal and rest periods required by California law. Additionally, Defendant's improper disclosures followed by background checks caused concrete injuries to the drivers and other employees in violation of the Fair Credit Reporting Act ("FCRA").

The proposed classes and subclass definitions are as follows:

**1.**      **Driver Class**. All of Defendant's current and former California-based driver employees at any time during the period beginning December 1, 2010 to the present. "California-based" refers to employees: (i) who had a residential address in California, and/or (ii) who were associated with a terminal located in California at any time during the period beginning December 1, 2010 to the present.

     **1.1**      **Driver Meal Break Subclass**. All members of the <u>Driver Class</u> who spent more than five continuous hours driving and/or on duty in California in a given workday.

///

///

**2.** **FCRA Class**. All of Defendant's driver employees in the United States who received an offer letter from Defendant for employment and were subjected to a background check at any time during the period beginning December 1, 2009 to the present.[1] "Background check" refers to any reports prepared by a "Consumer Reporting Agency" per Defendant's request.[2]

**2.1** **2-Year FCRA Subclass**. All members of the FCRA Class who were subjected to a background check after December 1, 2012.

Certification of any of these classes will likely warrant additional subclasses of employees who received inaccurate or incomplete pay stubs and former employees with waiting time penalties claims. Lab. Code §§ 203 and 226; *Pineda v. Bank of America, N.A.,* 50 Cal.4th 1389, 1398 (Cal. 2010).

Plaintiffs' motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and attachments thereto, Declarations of Donald Harrington, Edwin Ayala, Eric Scott Powell, Emilio Vazquez, Patrick Gatson, Anthony Bryant, Jamar Evans, James Williams, David Spivak, Shaun Setareh, Louis Benowitz, Brian Kriegler, and V. Paul Herbert, and the Exhibits and Request for Judicial Notice submitted herewith, all papers and pleadings on file in this action, those matters to which the Court takes

---

[1] *See e.g.* David Spivak declaration in support of this motion ("DS") ¶¶ 51, Exhibit ("Ex."), 49; Timothy Norlin's deposition ("TN depo."), 14:10-18:3, 124:24-125:10.
[2] The term "consumer reporting agency" means

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. §1681a(f).

judicial notice, the Reply Brief, and any other matters that may be considered by the Court upon hearing of the Motion.

Respectfully submitted,

**THE SPIVAK LAW FIRM**

Dated: April 9, 2018          By:  /s/ David Spivak
                              David Spivak

**SETAREH LAW GROUP**
Shaun Setareh
H. Scott Leviant

**LAW OFFICES OF LOUIS BENOWITZ**
Louis Benowitz

Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ........................................................................... 1

    A.   Defendant and Drivers' Electronically Recorded Activities............................ 1

    B.   Defendant Failed to Provide California Meal and Rest Periods. ..................... 2

        1.   Defendant's Prohibition of "Personal Use" Out-of-Route Miles Impedes California Meal and Rest Breaks.................................................. 3

        2.   Defendant Requires Drivers to Keep Their Tractor-Trailers in Sight at All Times Without Exceptions for Meal and Rest Periods ..................... 3

        3.   Defendant Imposes Time Restrictions on Drivers That Impede California Rest and Meal Periods............................................................ 3

        4.   Defendant Does Not Pay Its Drivers Premium Wages for Unprovided Meal and Rest Periods ................................................................ 4

    C.   Defendant Requires Employees to Submit to Background Checks Without Stand-Alone Disclosures. .................................................................. 4

III.  PROCEDURAL HISTORY ......................................................................... 4

IV.  SUMMARY OF APPLICABLE LAW ......................................................... 5

    A.   The Fair Credit Reporting Act ............................................................. 5

    B.   Laws and Regulations Governing Meal Periods and Rest Breaks.................... 7

DISCUSSION ...................................................................................................... 7

V.   STANDARDS GOVERNING MOTIONS FOR CERTIFICATION.......................... 7

VI.  THE REQUIREMENTS FOR CERTIFICATION ARE SATISFIED ..................... 9

A.   The Requirements of Rule 23(a) Are Satisfied Here ....................................... 9

1.   The Proposed Classes Are Numerous ...................................... 9

2.   There Are Several Questions of Law and Fact Common to All Class Members. ...................................................................................... 10

3.   Plaintiffs' Claims Are Typical of the Class Claims. .............................. 11

4.   Plaintiffs and Their Counsel Will Adequately Represent the Proposed Classes. .................................................................................... 13

B.   Plaintiffs Also Satisfy the Requirements of Rule 23 (b)(3) .......................... 13

1.   Common Issues Predominate Over Individual Ones ............................ 14

   a.   Common Issues Predominate as to Break Violations..................... 14

   b.   Common Issues Predominate as to Deficient FCRA Disclosures.. 15

2.   Individualized Issues as to Damages Do Not Defeat Predominance. .... 16

3.   The Ninth Circuit Rejected an Ascertainability Requirement, but Even if Such a Requirement Existed, It Would Be Easily Met .......................... 18

4.   Class Action Treatment Is The Superior Means for Resolving the Claims of the Class Members. ............................................................ 22

VII.  ADDITIONAL SUBCLASSES FOR LABOR CODE §§ 226 AND 203 ................ 23

VIII. CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Alberts v. Aurora Behavioral Health Care*
    241 Cal. App. 4th 388 (2015) .................................................. 11

*Amchem Prods. v. Windsor*
    521 U.S. 591 (1997) ...................................................... 18, 22

*Anderson v. Mt. Clemens Pottery Co.*
    328 U.S. 680 (1946) ......................................................... 17

*Arias v. Superior Court*
    46 Cal. 4th 969 (2009) ..................................................... 22

*Arthur Young & Co. v. U.S. Dist. Court*
    549 F.2d 686 (9th Cir. 1977) ............................................... 8

*Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*
    238 F.R.D. 82 (S.D.N.Y. 2006) ............................................ 21

*Augustus v. ABM Sec. Servs., Inc.*
    2 Cal. 5th 257 (2016) .................................................... 14

*Bell v. Farmers Ins. Exch.*
    115 Cal. App. 4th 715 (2004) .............................................. 23

*Benton v. Telecom Network Specialists, Inc.*
    220 Cal. App. 4th 701 (2013) .............................................. 11

*Bickley v. Schneider Nat'l Carriers, Inc.*
    2012 WL 12952719 (N.D. Cal. 2012) ................................. 1, 10, 15, 19

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) .......................................... 8, 9, 14

*Boyd v. Bank of Am. Corp.*
    300 F.R.D. 431 (C.D. Cal. 2014) ........................................... 23

*Bradley v. Networkers Internat., L.L.C.*
  211 Cal. App. 4th 1129 (2012)  ................................................................ 11, 17

*Brinker Rest. Corp. v. Superior Court*
  53 Cal. 4th 1004 (2012)  ....................................................................... 11, 17

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017)  ................................................. 9, 18, 21, 22

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*
  152 F.3d 1184 (9th Cir. 1998)  ................................................................. 24

*Campbell v. Vitran Express Inc*
  2015 WL 7176110 (C.D. Cal. Nov. 12, 2015)  ......................................... 11

*Cardenas v. McLane Foodservices, Inc.*
  796 F. Supp. 2d 1246 (C.D. Cal. 2011)  .................................................. 24

*Comcast Corp. v. Behrend*
  133 U.S. 1426 (2013)  .............................................................................. 16

*ConAgra Brands, Inc. v. Briseno*
  138 S. Ct. 313, 199 L. Ed. 2d 206 (2017)  ................................................ 9

*Dilts v. Penske Logistics, L.L.C.*
  769 F.3d 637 (9th Cir. 2014)  ................................................................... 24

*Dilts v. Penske Logistics, L.L.C.*
  135 S. Ct. 2049 (2015)  ........................................................................... 24

*Dominguez v. Schwarzenegger*
  270 F.R.D. 477 (N.D. Cal. 2010)  .............................................................. 8

*Duran v. U.S. Bank Nat'l Ass'n*
  59 Cal. 4th 1 (2014)  ............................................................................... 23

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974)  ................................................................................. 8

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011)  ........................................................7, 8, 9, 11

*Faulkinbury v. Boyd & Associates, Inc.*
    216 Cal.App.4th 220 (2013) ................................................. 11

*F.D.I.C. v. McSweeney*
    976 F.2d 532 (9th Cir. 1992) ................................................. 7

*Fisher v. Univ. of Tex.*
    136 S. Ct. 2198 (2016) ........................................................ 18

*Gen. Tel. Co. of the Southwest v. Falcon*
    457 U.S. 147 (1982) ............................................................ 10

*Gentry v. Superior Court*
    42 Cal. 4th 443 (2007) ........................................................ 22

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................... 11, 13, 14

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) ................................................. 8

*Hawkins v. S2Verify*
    2016 WL 3999458 (N.D. Cal. July 26, 2016) .....................15, 16

*Hernandez v. Mendoza*
    199 Cal. App. 3d 721 (1988) ................................................ 17

*In re Activision Sec. Litig.*
    621 F. Supp. 415 (N.D. Cal. 1985) ....................................... 12

*In re Myford Touch Consumer Litig.*
    2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ....................... 18

*In re S. Cent. States Bakery Prods. Antitrust Litig.*
    86 F.R.D. 407 (M.D. La. 1980) ............................................. 21

*Jimenez v. Allstate Ins. Co.*
    765 F.3d 1161 (9th Cir. 2014) .............................................. 23

///

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)  ........................................................ 13, 22

*Lozano v. AT&T Wireless Servs.*
    504 F.3d 718 (9th Cir. 2007)  ................................................................ 12

*Mazza v. Am. Honda Motor Co.*
    254 F.R.D. 610 (C.D. Cal. 2008)  ............................................................ 8

*McCowen v. Trimac Transp. Servs.*
    311 F.R.D. 579 (N.D. Cal. 2015)  .......................................................... 15

*Melgar v. CSK Auto, Inc.*
    2015 WL 9303977 (N.D. Cal. Dec. 22, 2015)  ...................................... 17

*Miles v. Merrill Lynch & Co.(In re Initial Pub. Offering Sec. Litig)*
    471 F.3d 24 (2d Cir. 1983)  ................................................................... 21

*Moore v. Hughes Helicopters, Inc., Div. of Summa Corp.*
    708 F.2d 475 (9th Cir. 1983)  ................................................................... 8

*Mullins v. Direct Dig., L.L.C.*
    795 F.3d 654 (7th Cir. 2015)  ................................................................. 21

*Murray v. GMAC Mortgage Corp.*
    2007 WL 1100608 (N.D. Ill. 2007)  ....................................................... 12

*Myford Touch Consumer Litig.*
    2016 WL 6873453 (N.D. Cal. Nov. 22, 2016)  ...................................... 18

*Negrete v. Allianz Life Ins. Co. of N. Am.*
    238 F.R.D. 482 (C.D. Cal. 2006)  ....................................................13, 14

*People ex rel. Harris v. Pac Anchor Transp., Inc.*
    59 Cal. 4th 772 (2014)  ......................................................................... 24

*Pineda v. Bank of America, N.A.*
    50 Cal.4th 1389 (2010)  ........................................................................ 24

*Reich v. S. New Eng. Telecomms. Corp.*
    121 F.3d 58 (2d Cir. 1997)  ................................................................... 18

*Ricaldai v. US Investigation Services, LLC*
    878 F. Supp.2d 1038 (C.D. Cal. 2012)........................................................17

*Ridgeway v. Wal-Mart Stores, Inc.*
    2016 WL 4529430 (N.D. Cal. 2016) ....................................................*passim*

*Robinson v. Equifax Info. Servs., L.L.C.*
    560 F.3d 235 (4th Cir. 2009) ...................................................... 5

*Sav-On Drug Stores, Inc. v. Superior Court*
    34 Cal. 4th 319 (2004) ............................................................ 23

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ............................................ 10

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ................................................... 8, 13

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011) ....................................................8, 9

*Syed v. M-I, L.L.C.*
    853 F.3d 492 (9th Cir. 2017) ................................................6, 7, 16

*Tyson Foods, Inc. v. Bouaphakeo*
    136 S. Ct. 1036 (2016) .............................................. 17, 18, 23

*United States v. Washington*
    872 F.2d 874 (9th Cir. 1989) ..................................................... 7

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ................................................. 8, 22

*Vaquero v. Ashley Furniture Indus.*
    824 F.3d 1150 (9th Cir. 2016) .............................................. 16, 18, 20, 21

*Villalpando v. Exel Direct Inc.*
    2016 WL 1598663 (N.D. Cal. Apr. 21, 2016) ................................... 18, 20

///

*Visa Check/Master Money Antitrust Litig. v. Visa*
    280 F.3d 124 (2d Cir. 2001) ...............................................................21, 23

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338, 131 S. Ct. 2541 (June 20, 2011) ......................................... 9

*Wang v. Chinese Daily News*
    737 F.3d 538 (9th Cir. 2013) .............................................................. 9, 14

*Wolin v. Jaguar Land Rover N. Am., L.L.C.*
    617 F.3d 1168 (9th Cir. 2010) ................................................................ 22

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir.) ........................................................................ 8

**Codes**

29 C.F.R. § 516.6 ...................................................................................... 17

49 C.F.R. § 392.6 ........................................................................................ 2

49 C.F.R. § 395.1 ...................................................................................... 17

49 C.F.R. § 395.8 ........................................................................................ 1

15 U.S.C. § 1681 ....................................................................................5, 6

29 U.S.C. § 211 ........................................................................................ 17

**Statutes**

Cal. Lab. Code § 203.................................................................................23

Cal. Lab. Code § 226.............................................................17, 23, 24, 25

Cal. Lab. Code § 226.7.............................................................................14

Cal. Lab. Code § 512.................................................................................. 7

Cal. Lab. Code § 1174 ............................................................................. 17

Cal. Lab. Code § 1175  ....................................................................... 17

Cal. Lab. Code § 1198  ....................................................................... 7

**Rules**

Fed. R. Civ. P., Rule 23  ................................................................ *passim*

**Other**

Industrial Welfare Commission Wage Order No. 9-2001  .............................. 7, 24

S. Rep. No. 104-185, at 35 (1995) ...........................................................5

140 Cong. Rec. H9797-05 (1994) ..........................................................5, 6

138 Cong. Rec. H9370-03 (1992) ...........................................................6

## I.   **INTRODUCTION**

Plaintiffs the Estate of Donald Harrington, Edwin Ayala, Eric Scott Powell, Emilio Vazquez, Patrick Gatson, Anthony Bryant, Jamar Evans, and James Williams ("Plaintiffs") seek to certify class claims for violations of California's wage and hour laws and the Fair Credit Reporting Act ("FCRA"). Defendant Marten Transport, LTD. ("Defendant") subjected all of its California-based drivers to the same basic and improper policies that failed to provide them with meal and rest periods. Because of this, Plaintiffs' claims should be certified for class treatment.[3]  Plaintiffs' FCRA claim also warrants class treatment because Defendant's failure to provide stand-alone disclosures to any of its employees before background checks injured them in the same manner.

## II.   **STATEMENT OF FACTS**

Defendant is a large trucking company that employs thousands of drivers and other employees nationwide. Defendant employed Plaintiffs as California-based drivers during the relevant period. DS ¶¶ 89, 101-102, and 112-116, Exs. 85-87 and 97-101; Donald Harrington Decl. ("DH") ¶ 2; Edwin Ayala Decl. ("EA") ¶ 2; Eric Scott Powell Decl. ("ESP") ¶ 2;  Emilio Vazquez Decl. ("EV") ¶ 2;  Patrick Gatson Decl. ("PG") ¶ 2; Anthony Bryant Decl. ("AB") ¶ 2;  Jamar Evans Decl. ("JE") ¶ 2;  James Williams Decl. ("JW") ¶ 2.

### A.   **Defendant and Drivers' Electronically Recorded Activities.**

Drivers record their activities and communications with Defendant. DS ¶ 71, Ex. 68, DEF399; DS ¶ 70, Ex. 67, DEF670-671; DS ¶ 10 and 50, Exs. 8 and 48, Douglas Petit deposition ("DP depo."), 46:4-47:10. Drivers record daily their duty status (driving, on duty, off duty, or sleeper birth). Ex. 68, DEF561; *see also* 49 C.F.R. § 395.8; DS ¶¶ 30-31

---

[3] The class certification order in *Bickley v. Schneider National Carriers, Inc.,* CV-08-05806-JSW, 2012 WL 12952719 (N.D. Cal. 2012) decision (Ex. 70), a decision also involving interstate California truck drivers, states, "Whether [Defendant] is correct and it is legal under California law to incorporate pay of certain activities into the piece-rate compensation for other activities is a question of law which is common to all putative class members." 8:6-18. DS ¶ 73.

and 48, Ex. 28-29 and 46; DS ¶¶ 89 and 101-111, Exs. 85-96 ¶ 5. Defendant records driver locations on a frequent basis through Qualcomm. DP depo., 69:9-70:16. Defendant also records the geographic locations of assigned trucks ("ping" records). DS ¶¶ 87-88, Exs. 83-84.

### B.   Defendant Failed to Provide California Meal and Rest Periods.

Defendant's drivers often work more than ten hours in a workday. DS ¶ 31, Ex. 29; Exs. 85-96 ¶ 6; Exs. 97-101 ¶ 4; DS ¶ 3, Ex. 1, DEF7688. Until this year, neither Defendant's policy compilations nor training materials provided for California-compliant meal and rest periods. DS ¶¶ 11, 12, 14, 20, Exs. 9, 10, 12, 18.[4] Defendant did not schedule any meal and rest periods for its drivers and Defendant feigns ignorance of whether it factored 30-minute meal periods or 10-minute rest periods into schedules for deliveries and pickups.[5] DS ¶ 101, Ex. 86 ¶¶ 8-10; DS ¶¶ 89 and 102-111, Exs. 85 and 87-96 ¶¶ 10-12; DS ¶¶ 112-116, Exs. 97-101 ¶¶ 5-7; DP depo., 93:22-94:11, 95:12-96:7. Defendant's compliance with California meal and rest break laws and the requirement of payment for all hours worked did not occur until February 2016. DP depo., 44:13-20, 56:7-57:18; DS ¶ 5, Ex. 3; DS ¶ 10 and 51, Exs. 8 and 49, Timothy Norlin deposition ("TN depo."), 69:9-25; DS ¶ 3, Ex. 1, DEF7685-DEF7696. Until February 2016, Defendant had no "Macro" (Qualcomm code) for drivers to record meal periods. DP depo., 72:25-73:14, Ex. 1, DEF7696. Further, Defendant did not enter into on-duty meal period agreements or meal period waivers with its drivers. DP depo., 132:24-134:5.

---

[4] Defendant created a training material on California compliant meal and rest breaks more than a year after Plaintiff Donald Harrington brought his lawsuit. DP depo., 29:9-32:2, Ex. 1; TN depo., 55:4-21. Prior to these materials, Defendant had no written policies on meal and rest periods. DP depo., 29:12-22, 31:23-32:2, 44:7-12. Defendant also admits that it does not provide its California resident drivers with any unique training on its policies. DP depo., 65:11-15.

[5] Federal regulations have at all times prohibited Defendant from scheduling deliveries that require the driver to exceed "speeds greater than those prescribed by the jurisdictions in or through which the commercial motor vehicle is being operated." 49 C.F.R. § 392.6. Whether this regulation required Defendant to factor California rest and meal periods into its delivery schedules, as Plaintiffs contend, is common question.

1.   **Defendant's Prohibition of "Personal Use" Out-of-Route Miles Impedes California Meal and Rest Breaks**

Defendant does not pay its drivers for "out-of-route miles," i.e., "miles put on the truck for reasons that are not related to the route the customer has requested." DS ¶ 12, Ex. 10, page 23.[6] Defendant threatens drivers with discipline for miles driven for "personal use," i.e. meal and rest periods. DS ¶ 9, Ex. 7, DEF525; DP depo., 116:11-12; Ex. 10, page 23. Defendant warns drivers that it will charge them for driving unauthorized out-of-route miles. TN depo., 85:12-25.

2.   **Defendant Requires Drivers to Keep Their Tractor-Trailers in Sight at All Times Without Exceptions for Meal and Rest Periods**

Defendant requires its drivers to keep their assigned trucks and trailers within sight at all times.[7] It makes no exception for meal or rests periods.

3.   **Defendant Imposes Time Restrictions on Drivers That Impede California Rest and Meal Periods**

Defendant's mission is "To meet the transportation needs of [its] customers' in a profitable manner" by" "pick[ing] up and deliver[ing] the produce damage free, on-time and in the most cost effective manner." DP depo., 113:13-114:4; DS ¶ 8, Ex. 6. Defendant provides its drivers with appointment requirements for each shipment's pickup and/or delivery and notifies the driver of the expected trip time length. DP depo., 114:11-16, 141:17-21, 199:7-18. Defendant asks the drivers to delay their breaks and take them when they arrive at customer's facility and disciplines its drivers if they are late for a delivery.[8]

---

[6] *See also* DS ¶ 9, Ex. 7, DEF525; *see also* DP depo., 115:6-116:10, 118:13-120:5, 120:18-121:1, 121:4-15, 122:23-123:2, 123:12-25, 124:7-24, 125:21-126:2; TN depo., 85:16-25.

[7] *See* DS ¶ 12, Ex. 10, page 22; DS ¶ 70, Ex. 67, DEF689; DS ¶ 71, Ex. 68, DEF527; DS ¶ 72, Ex. 69, DEF2289; DS ¶ 16, Ex. 14, DEF 945; DS ¶ 84, Ex. 80, DEF1077 and DEF1249; DS ¶ 85, Ex. 81, DEF1831; DS ¶ 86, Ex. 82, DEF2048-DEF2049; DS ¶¶15-18, Exs. 13-16; DP, 145:23-147:15, 172:3-173:12, 199:21-201:7; DS ¶ 26, Ex. 24; DS ¶ 28, Ex. 26; Exs. 85-96 ¶¶ 3 and 11; Ex. 85 ¶¶ 3 and 9; Exs. 97-101 ¶¶ 3 and 6.

[8] DS ¶ 24 and 49, Exs. 22 and 47; DP, 16:3-5, 191:5-192:14, 197:2-15; DS ¶ 25, Ex.

Further, Defendant holds drivers to time restrictions for its many temperature sensitive loads.[9] These restrictions prevent drivers from stopping for rest and meal periods. *Id.*

### 4. Defendant Does Not Pay Its Drivers Premium Wages for Unprovided Meal and Rest Periods

Defendant also did not have a policy to pay premium wages to drivers who were not able to take a meal or rest break before February 2016. DP depo., 80:21-81:22, 83:3-84:2.

### C. Defendant Requires Employees to Submit to Background Checks Without Stand-Alone Disclosures.

Defendant offers employment to drivers conditionally based on the results of complete background checks.[10] In Defendant's background check disclosure documents, it requires employment applicants to (1) certify that the information they present in the application is true and correct, (2) acknowledge that Defendant may deny them employment for false information, (3) authorize an extensive investigation into their histories, and (4) release Defendant and its agents from any resulting liability or damages. *Id.* As such, the pre-background check documents are not "stand alone" disclosures under the Fair Credit Reporting Act ("FCRA"). DS ¶ 3, Ex. 1, DEF7714-7727.

## III. PROCEDURAL HISTORY

On December 1, 2014, Plaintiff Donald Harrington filed his lawsuit stating two broad class definitions that include those for which Plaintiffs now seek class treatment. DS ¶¶ 62-64, Exs. 59-61. On February 27, 2015, Defendant removed Plaintiff Harrington's case to this Court. DS ¶¶ 65-66, Exs. 62-63. On August 31, 2015, Defendant filed its Answer. DS ¶ 68, Ex. 65. On October 13, 2016, Plaintiff Donald Harrington moved for class certification. (ECF Docket No. 58). Plaintiff Harrington died before the motion was

---

23; DS ¶ 27, Ex. 25; DS ¶19, Ex. 17; DS ¶80, Ex. 77.

[9] DS ¶ 12, Ex. 10, pages 3-4; DP, 140:21-142:10; DS ¶ 33, Ex. 31; Ex. 86 ¶¶ 3 and 8-10; Exs. 85 and 87-96 ¶¶ 3 and 10-12; Exs. 97-101 ¶¶ 3 and 5-7.

[10] TN depo., 14:10-18:3, 124:24-125:10; DS ¶¶ 39-47, Exs. 37-45; Ex. 86 ¶ 11; Exs. 85 and 87-96 ¶ 13; Exs. 97-101 ¶ 8.

opposed or decided. (ECF Docket No. 87). On August 23, 2017, Plaintiffs the Estate of Donald Harrington and other California-based drivers employed by Defendant (Edwin Ayala, Eric Scott Powell, Emilio Vazquez, Patrick Gatson, Anthony Bryant, Jamar Evans, and James Williams) filed a Second Amended Complaint. (ECF Docket No. 94; DS ¶¶ 78-79, Exs. 75-76). On January 29, 2018, the Court ordered the dismissal of certain claim pursuant to the stipulation of the parties.  (ECF Docket No. 107). The lawsuit is limited to Plaintiffs' meal and rest period claims and FCRA claims.

## IV.   SUMMARY OF APPLICABLE LAW

### A.   The Fair Credit Reporting Act

Congress enacted the Fair Credit Reporting Act in 1970 to protect the "consumer's right to privacy" by ensuring "the confidentiality, accuracy, relevancy, and proper utilization" of consumer credit information. 15 U.S.C. § 1681(b). And, recognizing the "vital role" that consumer reports play in the modern economy, Congress sought to encourage those who handling the sensitive information in those reports to "exercise their grave responsibilities" in a way that "ensure[s] fair and accurate credit reporting." 15 U.S.C. § 1681(a); *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 239 (4th Cir. 2009). The FCRA furthers these purposes through a set of interrelated requirements and prohibitions—including strict restrictions on the use of reports for various purposes and detailed requirements about how consumers must be informed of their rights.

A critical motivation for revisions to the FCRA was the impact of third-party data collection on the individual privacy rights of job seekers. When it revised the FCRA, Congress voiced a strong "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper *invasion of privacy*." S. Rep. No. 104-185, at 35 (1995). As one legislator explained, the FCRA's protections represented "new safeguards to protect the *privacy* of employees and job applicants"; the amendments to the FCRA were "an important step to *restore employee privacy rights*." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman

Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and ***privacy protections***").

As a result, the FCRA, at 15 U.S.C. § 1681b(b), requires employers to use certain standard form documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees. Section 1681a(d)(1) of the FCRA defines "consumer report" as:

> [A]ny oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes.

As one of the many specified practices required of employers using "consumer reports" to assess the qualifications of prospective and current employees, the FCRA expressly requires employers to provide a "***clear and conspicuous*** disclosure . . . in a document that consists ***solely*** of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). It recognizes only one exception to this, namely that the FCRA authorization can be combined with the FCRA disclosure in the same document. 15 U.S.C. § 1681(b)(2)(A)(ii) ("which authorization may be made on the document referred to in clause (i)"). Absent the job seeker's informed consent or strict compliance with the statute's disclosure requirements, a company is prohibited from obtaining a consumer report on the job seeker.  Because the Congress determined that the policies underlying the FCRA are of substantial importance, a plaintiff is entitled to statutory damages when the defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A).

The Ninth Circuit recently issued a significant decision on the issue of violation of the stand-alone disclosure requirement of the FCRA. *Syed v. M-I, LLC*, 2017 WL M-I,

LLC, 853 F.3d 492 (9th Cir. 2017), *petition for rev. denied* (November 13, 2017).[11]  In *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id.* at 497-98. The Ninth Circuit held that because, under the plain language of the FCRA the required disclosure must be in "a document that consists solely of the disclosure," the inclusion of surplusage such as a liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id.* at 500. This Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure: "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id.* at 505-6.

### B.    Laws and Regulations Governing Meal Periods and Rest Breaks

California provides truck drivers with a 30-minute meal period before more than five hours worked, and a second 30-minute meal period before more than ten hours worked. Lab. Code §§ 512 and 1198; Ex. 3, Wage Order 9, § 11. It provides a 10-minute rest period for every four hours worked, or major fraction thereof. Ex. 3, Wage Order 9, § 12. An employer must pay the driver concerned an hour's pay for each day in which it does not provide a rest or meal period. *Id.*

### DISCUSSION

## V.    STANDARDS GOVERNING MOTIONS FOR CERTIFICATION

Parties seeking certification bear the burden of demonstrating that they meet the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979-80 (9th

---

[11] Because *Syed* is dispositive as to the "standalone" requirement imposed under the FCRA, and no intervening authority exists that limits or overrules it, *Syed* is the law of the Circuit.  *F.D.I.C. v. McSweeney,* 976 F.2d at 535, citing *United States v. Washington*, 872 F.2d 874 (9th Cir. 1989).

Cir. 2011), citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), amended by 273 F.3d 1266 (9th Cir.2001).[12]

When deciding on a certification motion, all factual allegations in Plaintiffs' operative complaint must be accepted as true. *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977), *cert. denied* 434 U.S. 829 (1977); *Blackie v. Barrack*, 524 F.2d 891, 900 n. 17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).  As the Ninth Circuit reiterated in *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983), a limited "inquiry into the substance of a case may be necessary to ascertain satisfaction of Rule 23(a)'s commonality and typicality requirements, [but] it is improper to advance a decision on the merits to the class certification stage."  *Id.* at 480 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974)); see also *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996).  Instead, at this point, the Court need only determine if the Plaintiff has satisfied Rule 23, ***not weigh competing evidence***.  *Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003); *Blackie*, 524 F.2d at 901 n.17.

Evidence is not evaluated on an admissibility standard, such as would be the case for summary judgment or trial.  At the certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008), reversed on other grounds.  "[T]he court may consider evidence that may not be admissible at trial," *Mazza*, 254 F.R.D. at 616 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)), and a "district court may certify a class without supporting evidence." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)).

"The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie*, 524 F.2d at 905; *Stearns v. TicketMaster Corp.*, 655 F.3d

---

[12] Plaintiffs discuss Rule 23(a) requisites in Section VI.A, and Rule 23(b)(3) requisites in Section VI.B.

1013, 1026 (9th Cir.2011) (citing *Blackie* and decided after the *Wal–Mart* and *Ellis*).

While some courts have imposed an ascertainability requirement onto the Rule 23 certification requisites, the Ninth Circuit, in 2017, joined other Circuits in expressly rejecting such a requirement: "We have never interpreted Rule 23 to require such a showing, and, like the Sixth, Seventh, and Eighth Circuits, we decline to do so now." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313, 199 L. Ed. 2d 206 (2017).

## VI.   THE REQUIREMENTS FOR CERTIFICATION ARE SATISFIED

### A.   The Requirements of Rule 23(a) Are Satisfied Here

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (June 20, 2011).  Under Rule 23(a), the party seeking certification must demonstrate, first, that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See also*, *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 542 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. at 2550 (June 20, 2011)) (internal quotations omitted).

#### 1.   The Proposed Classes Are Numerous

Plaintiffs also satisfy the numerosity requirement for each class and subclass. According to Defendant's records, there are over one thousand potential class members. DS¶ 12, Ex. 10, page 6; DS ¶¶65-66, Exs. 62-63; DS ¶¶ 69, 75, Exs. 66, 72. Defendant also admits that there are 1,133 California drivers who picked up or dropped off a load in California during a portion of the class period. DS ¶ 6, Ex. 4; *see also* DS ¶¶ 65-67, Exs. 62-64; *see also* DP depo., 145:3-10. Defendant estimated over 40,000 individual FCRA Class members. DS ¶¶ 65-67, Exs. 62-64. The classes are, therefore, so large that joinder

of all members would be impracticable.

## 2. There Are Several Questions of Law and Fact Common to All Class Members.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes,* 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 (1982). The "claims must depend on a common contention" and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* For the purposes of Rule 23(a)(2), a single question of law or fact common to the class will satisfy the commonality requirement. *Id.* at 2556 (internal citations omitted).

Here, there are numerous significant common questions of fact and law including, but not limited to: (1) Whether for the Driver Class "Mandatory breaks are based on hours worked **in California**" only (Ex. 1, DEF7687; *Ridgeway v. Wal-Mart Stores, Inc.* 2016 WL 4529430, at *17 (N.D. Cal. 2016)); (2) Whether for the Driver Class hours worked before entering California and after leaving California do not count toward hours worked (Ex. 1, DEF7687; *Ridgeway*, 2016 WL 4529430, at *17); (3) Whether for the Driver Class Defendant's written policies failed to provide its drivers with meal and rest breaks as required by California law; and (4) Whether for the FCRA Class the employees who underwent Defendant's background checks suffered a concrete injury due to Defendant failure to issue "stand alone" disclosures that do not violate the FCRA (Exhibit 1, DEF7714-7727; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016)).[13]

The answers to these questions, which can be established through common proof, will potentially drive the resolution of this litigation for all proposed class members. *Bickley,* 2012 WL 12952719 (N.D. Cal. 2012). Ex. 70, 8:6-18 held that

---

[13] David Spivak articulates several additional common questions in his declaration, in part to show his adequacy as class counsel. DS ¶ 81.

> In light of [Defendant's] failure to instruct its drivers regarding the timing of rest breaks and meal periods as required by California law and [Defendant's] failure to keep records of its employees' meal periods, the Court find Plaintiffs have sufficiently demonstrated common question which are applicable class-wide.

*Id.*, 2-12. In this case, Defendant did not provide the drivers with any meal and rest break policies and therefore, failed to inform the drivers of their right to meal and rest breaks under California law. *Alberts v. Aurora,* 241 Cal.App.4th 388, 406 (2015) (a uniform rest break policy that failed to give full effect to the "major fraction" language of the applicable wage order was the sort of claim "routinely, and properly, found suitable for class treatment").[14]

### 3.   Plaintiffs' Claims Are Typical of the Class Claims.

Typicality requires a determination of whether the proposed representative plaintiff's claims are typical of those of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). A representative's claims are "typical" if they are "reasonably co-extensive with those of absent class members," but they "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998).

---

[14] "The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof. Although an employer could potentially defend these claims by arguing that it did have an informal or unwritten meal or rest break policy, this defense is also a matter of common proof." *Brinker*, 53 Cal.4th at 1029 (2012); *see also Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal.App.4th 220, 236-237 (2013); *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701, 722 (2013); *Bradley*, 211 Cal.App.4th at 1150 ("Although an employer could potentially defend these claims by arguing that it did have an informal or unwritten meal or rest break policy, this defense is also a matter of common proof."); *Campbell v. Vitran Express Inc*, 2015 WL 7176110, at *10 (C.D. Cal. Nov. 12, 2015) (the court certified meal and rest period claims where defendant's policies did not state that employees were entitled to a second meal period if they work more than ten (10) hours and failed to inform class members that rest breaks must be provided every "major fraction" of a four-hour period).

As such, it is "not necessary that all class members suffer the same injury." *Lozano v. AT&T Wireless*, 504 F.3d 718, 734 (9th Cir. 2007).[15]

Plaintiffs' claims are typical of the classes they seek to represent. Like all the other class members, Defendant employed Plaintiffs as California-based truck drivers during the relevant time period. Plaintiffs were subject to the same uniform policies and practices and compensation scheme as their fellow class members. As a result of these policies and practices, Plaintiffs were denied wages for all time worked and for rest breaks, were not provided with meal and rest breaks, and were not provided with accurate itemized wage statements. Defendant also subjected Plaintiffs to the same background checks in the wake of the same improper disclosures as other drivers and were subject background checks during the two-year and five-year limitations periods applicable to the FCRA claim:

| W/IN 5 YEARS OF FILED COMPLAINT | HIRE DATE |
|---|---|
| JAMAR EVANS | Approx. 2/24/2011 |
| PATRICK GATSON | Approx. 6/3/2011 |
| DONALD HARRINGTON | Approx. 4/2012 |
| EDWIN AYALA | Approx. 3/2013 |
| JAMES WILLIAMS | Approx. 5/4/2013 |
| ERIC SCOTT POWELL | Approx. 9/3/2014 |
| EMILIO VAZQUEZ | Approx. 3/9/2015 |

| W/IN 2 YEARS OF FILED COMPLAINT | HIRE DATE |
|---|---|
| EDWIN AYALA | Approx. 3/2013 |
| JAMES WILLIAMS | Approx. 5/4/2013 |
| ERIC SCOTT POWELL | Approx. 9/3/2014 |
| EMILIO VAZQUEZ | Approx. 3/9/2015 |

*See* JE ¶ 2; PG ¶ 2; DH ¶ 2; EA ¶ 2; JW ¶ 2; ESP ¶ 2; EV ¶ 2. Thus, Plaintiffs' claims, and

---

[15] *See also Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608, *5 (N.D. Ill. 2007) (finding typicality where, despite minor factual discrepancies, all class members had "the same essential characteristics"); *see also In re Activision Secur. Litig.*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (noting that "the only material variation among class members is the amount of damages to which each member is entitled" and reasoning that "[s]uch differences are insufficient to defeat class certification").

Defendant's potential defenses to those claims, are typical of the proposed classes and subclasses as a whole.

### 4.     Plaintiffs and Their Counsel Will Adequately Represent the Proposed Classes.

To satisfy the adequacy requirements of Rule 23(a)(4), Plaintiffs must demonstrate that (1) the proposed class representatives do not have conflicts of interest with the class, and (2) he and his counsel will vigorously prosecute the case on behalf of the class. *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon v. Chrysler Corp,* 150 F.3d 1011, 1020 (9th Cir. 1998) ("*Hanlon*"). Both requirements are met here. First, as discussed above, Plaintiffs share the same claims as class members and those claims could be subject to the same defenses. DS ¶¶ 89, 101-102, and 112-116, Exs. 85-87 and 97-101. Plaintiffs have dutifully cooperated with counsel in pursuing this case, and neither Plaintiffs nor their counsel are aware of any other pending actions in any court alleging the same or similar causes of action or any conflict of interest that will arise between Plaintiffs and the classes they seek to represent. *Id*. Plaintiffs' declarations show that they will be adequate class representatives. *Id*. Moreover, as their supporting declarations show, Plaintiffs' Counsel have substantial experience in this area of law and have already spent substantial hours interviewing the named Plaintiffs and other class members, researching the claims, conducting discovery, taking depositions, and retaining experts to analyze wage information and damages. DS ¶¶ 90-100; *see* Setareh and Benowitz declarations. Thus, Plaintiffs and their Counsel are adequate to represent the classes.

### B.     Plaintiffs Also Satisfy the Requirements of Rule 23 (b)(3)

Under Rule 23(b)(3), certification is proper if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual class members; and (2) class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.   *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Negrete*,

238 F.R.D. at 487, 489. Here, Plaintiffs satisfy both.

## 1.     <u>Common Issues Predominate Over Individual Ones</u>

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang*, 737 F.3d at 545. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. This is a balancing test and allows for some individualized questions so long as they do not predominate over common ones and it is well settled that the need for determining differing amounts of damages suffered by class members does not preclude class certification. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

### a.     <u>*Common Issues Predominate as to Break Violations*</u>

As explained above, class members share predominant common questions regarding break violations under the predominance standards. Because the answer to the common questions surrounding break violations will resolve Defendant's liability to class members except with respect to the amounts of damages to be awarded, the class satisfies the Rule 23(b)(3) requirement. Plaintiffs have identified numerous common questions of law and fact in addressing the commonality element. But at the core of the Driver Class claim is a single common question: whether Defendant's policies provide for timely, *duty-free* meal and rest periods under California law. *Augustus v. ABM Sec. Servs., Inc*., 2 Cal. 5th 257, 260 (2016), *as modified on denial of reh'g* (Mar. 15, 2017) ("What we conclude is that state law prohibits on-duty and on-call rest periods."); *id*, at 265 ("It would be difficult to cast aside section 226.7's parallel treatment of meal periods and rest periods and conclude that employers had completely distinct obligations when providing meal and rest periods."). Under the governing case law, Plaintiffs' evidence is not only sufficient to

justify class certification (*see* Ex. 70, the *Bickley* order, 12:25-13:9), but also would support summary adjudication for Plaintiffs. *See also McCowen v. Trimac Transp. Servs. (W.), Inc.,* 311 F.R.D. 579, 584 (N.D. Cal. 2015) ("*McCowen*"). The court in *McCowen* also certified plaintiff's meal and rest break claims even though defendant had a formal policy for breaks.[16] Here, Defendant had no formal break policy and, like Trimac, failed to schedule breaks and imposed unrealistic scheduling and delivery requirements without considering California's meal and rest break requirements. First, Defendant prohibits its drivers from going off the route to take meal and rest periods and charges and disciplines them if they do so without their managers' authorization. Second, Defendant prohibits its drivers from leaving the sight of their vehicles. Defendant, however, admits that it is very difficult for drivers to determine whether a location is considered secure under Defendant's policies. DP depo., 166:5-167:14, 169:1-17. Third, Defendant provides its drivers with pickup and delivery times and disciplines them if they are late for their appointments. In the absence of a formal meal and rest period policy, these class-wide restrictions not only discourage the drivers from taking meal and rest periods provided under California law but also leave them with no choice but to forego their breaks. Therefore, the common questions predominate.

### b.     *Common Issues Predominate as to Deficient FCRA Disclosures*

Claims that employment background checks do not comply with the requirements imposed by the FCRA are also extremely well suited to class treatment. *See, e.g., Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *6 (N.D. Cal. July 26,

---

[16] The court explained that "If Trimac's drivers are provided breaks only on paper because the cumulative burden of the company's actual practices undermines the taking of breaks, then Trimac will be liable to its [] drivers on a class-wide basis." *McCowen*, at 586. The court also explained the policies and practices plaintiff targets "appear to have applied company-wide. Trimac may be right that McCowen will not ultimately prove the "counter-policies" alleged, but that is not the present question. For now, McCowen demonstrates sufficiently that such class-wide issues predominate over individualized issues." *Id.,* 588.

2016). Here, Plaintiffs have submitted evidence of Defendant's uniform practice of conditioning driver employment on the results of completed background checks.[17] Defendant utilizes a common set of application documents that includes an extraordinarily deficient FCRA disclosure.  The deficient disclosure requires a certification of correctness of information in the employment application, an acknowledgment that Defendant may deny employment for false information, an authorization of an extensive investigation into the applicant's background, and a release of Defendant and its agents from any resulting liability or damages. *Id*.  Common evidence will establish multiple, classwide violations of the FCRA, including that (1) Defendant failed to provide a standalone disclosure, (2) the disclosure and authorization improperly incorporates an unlawful liability waiver (*see*, *Syed*, 853 F.3d at 500-506), and (3) the disclosure and authorization is not "clear and conspicuous." DS ¶ 3, Ex. 1, DEF7714-7727.  As the issue of liability on a classwide basis turns on Defendant's use of a deficient, standardized form, it is beyond cavil that common issues of law and fact predominate.

## 2.   <u>Individualized Issues as to Damages Do Not Defeat Predominance.</u>

In a wage and hour case, the potential need to prove damages on an individual basis does not defeat predominance and therefore is not a basis for denying certification. *Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150 (9th Cir. 2016).  In *Vaquero* the defendant in a wage and hour case argued that pursuant to *Comcast Corp. v. Behrend*, 133 U.S. 1426 (2013) predominance does not exist if damages calculations must be performed on an individual basis. The Ninth Circuit rejected that construction of *Comcast:* "We have interpreted *Comcast* to mean that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Id.* at 1154.  The Ninth Circuit further explained: "In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions *necessarily* caused the class members'

---

[17] TN depo., 14:10-18:3, 124:24-125:10; DS ¶¶ 39-47, Exs. 37-45; Ex. 86 ¶ 11; Exs. 85 and 87-96 ¶ 13; Exs. 97-101 ¶ 8.

injury. . . . Therefore, even if the measure of damages proposed here is imperfect, it cannot be disputed that the damages . . . stemmed from *Defendants'* actions." *Id.* at 1155.

Defendant contends that it did not retain electronic records for the pre-July 2014 Driver Class time period because federal motor carrier regulations only require it to preserve hours of service records for six months (49 C.F.R. § 395.1). DS ¶ 12, Ex. 10, page 12. However, this did not excuse preservation of (1) two years' worth of employee names and contact information, daily work hours, and the wages paid (Cal. Lab. Code §§ 226, 1174-1175), (2) one years' worth of earned wages, hourly rates, total hours worked, and piece rates earned per pay period (Cal. Lab. Code §226), (3) three years' worth of employee name, contact information, wages, hours, and employment practice and conditions records (29 U.S.C. § 211(c)), nor (4) two years' worth of wage rates and order and shipping records and basic time and earnings records and work schedules (29 C.F.R. § 516.6). Consequently, Defendant must bear the brunt of its decision to ignore these long-standing recordkeeping laws. Where

> the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes… an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Melgar v. CSK Auto, Inc.*, 2015 WL 9303977, at *9 (N.D. Cal. Dec. 22, 2015) (*Mt. Clemens* applicable to Cal. Labor Code violations); *Hernandez v. Mendoza*, 199 Cal.App.3d 721, 725 (1988). A representative sample may fill in the evidentiary gap Defendant caused. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("*Tyson Foods*").[18] Should the court certify

---

[18] *See also Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1053 (2012) ("*Brinker*") (Werdegar, J., concurring) (finding rebuttable presumption that employer failed to provide timely meal period employee's time records do not indicate one) (followed by *Bradley v. Networkers Internat., LLC*, 211 Cal.App.4th 1129, 1144 (2012) (review denied March 20, 2013) ("*Bradley*") and *Ricaldai v. US Investigation Services, LLC,* 878 F. Supp.2d 1038, 1044 (C.D. Cal. 2012)).

the case based on the predominant common questions discussed above, it should provide Plaintiffs with the opportunity to show whether a survey or model will yield a statistical sampling sufficient for trial of class claims. *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 67 (2d Cir. 1997); *Villalpando v. Exel Direct, Inc.* 2016 WL 1598663 (N.D. Cal 2016). Such sampling may be used to determine which employees worked in California and for what periods of time per workday. Defendant can then challenge the sufficiency of Plaintiffs' evidence through summary judgment. *Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150, 1156 (9th Cir. 2016).

Proof of damages in aggregate, through means such as surveys, sampling, or other estimation methods is particularly appropriate where the party with the duty to maintain records (here, Defendant) failed to do so.  *In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558, at *17 (N.D. Cal. Sept. 14, 2016), *on recon. in part*, No. 13-CV-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016), citing *Vaquero*, *Tyson*, and *Fisher v. Univ. of Texas at Austin*, 136 S. Ct. 2198, 2242 n.19 (2016). Here, proof of damages in aggregate is exceedingly appropriate.

### 3.   The Ninth Circuit Rejected an Ascertainability Requirement, but Even if Such a Requirement Existed, It Would Be Easily Met

The Ninth Circuit held in 2017 that an "ascertainability" requisite is incompatible with the plain language of Rule 23.  "Because the drafters specifically enumerated '[p]rerequisites,' we may conclude that Rule 23(a) constitutes an exhaustive list." *Briseno*, 844 F.3d at 1125.  The Ninth Circuit observed that "Supreme Court precedent also counsels in favor of hewing closely to the text of Rule 23."  *Briseno*, 844 F.3d at 1126, citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

However, even if such a non-textual prerequisite were imposed here, it would be easily satisfied. The proposed classes here are ascertainable because potential class members can identify themselves by objective criteria such as whether they were California residents, whether and when they worked in California, whether they were

provided meal and rest periods, and whether they did not receive a proper background check disclosure during the employment application process. Defendant can determine the state of residency from its records. DS ¶12, Ex. 10, page 31; DP depo., 64:22-65:4; DS ¶ 74, Ex. 71. Defendant already provided Plaintiff's counsel with a list of all California resident driver employee identification numbers. DS ¶¶ 69, 75, Exs. 66, 72. Defendant's payroll records and its "Operator Settlements" ("settlement details," pay stubs) show residence addresses for the drivers and miles driven per day. DS ¶¶ 13, 35-37, 38, 57-58, Exs. 11, 33-35, 36, 55-56.

Defendant admits that it is able to track its drivers' time to determine when they are operating in California. DS ¶ 3, Ex. 1, DEF7687; TN depo., 71:1-15, 71:22-72:4. *See* DS ¶ 73, Ex. 70 (*Bickley*), 4:10-14 (ascertainability met where defendant admitted that it can determine where its employees were during the workweek). Defendant has maintained a host of electronic records that will enable the Court to determine when class members performed work in California. Defendant's records in the form of position reporting (i.e. "ping") records, driver logs (HOS Log Details and HOS Log Summaries), fueling (fuel data), load/unload, and toll reports, show the dates and times that drivers were inside or outside of California. DS ¶ 87, Ex. 83; DS ¶¶ 30-31, Exs. 28-29; Ex. 55; DS ¶¶ 21-23, Exs. 19-21; DS ¶ 56, Ex. 54; DS ¶¶ 31-33, Exs. 29-31.[19] From these records, the Court can

_____

[19] Defendant has truck position reporting records for the entire class period and records showing the drivers assigned to the trucks. Such "ping" records show the cities and states each driver performed his/her duties in a workday and the amount of time spent in California. DS ¶¶ 87-88, Ex. 83-84. Defendant's "loading and unloading records" also cover the class period. *See e.g.s.*, DS ¶¶ 7 and 53-54, Exs. 5 and 51-52. Such records show the city, state, and date of the load and unload ("P" and "D") in addition to the time spent on the activity. *Id.* Defendant's HOS Log Details show the times, cities and states of each activity a driver performed, including time spent "on duty," "off duty," "sleeper birth" and "driving." Defendant has produced samples of such records dating back to July of 2014. DP, 212:19-214:3; DS ¶¶ 30, 55, Exs. 28, 53; DS ¶ 3, Ex. 1, DEF7691; DS ¶ 4, Ex. 2. Defendant's "fuel" records show the dates, times, cities, and states where Defendant's drivers stopped for fuel. Sample records Defendant produced date back to December of 2010. Ex. 54. Defendant's payroll summaries show

estimate the time class members spent on work and personal activities such as driving, on duty not driving, periods of rest and the dates, and times and locations of such activities.

While, as noted above, Defendant failed to maintain all of the records it is required to preserve as an employer in California, Defendant does admit that, for a portion of the class period applicable to drivers, it has precise records (Omnitracs log data) showing the time spent and activities performed by drivers in California. Ex. 4. To the extent these records do not exist for work performed by class members early in the class period, Plaintiff can construct models based on the electronic records in existence to determine time spent on activities for that period. DS ¶ 52, Ex. 50, Brian Kriegler Decl. ("BK"); DS ¶ 88, Ex. 84, V. Paul Herbert Decl. ("VPH"). For example, from the load and unload records, the Court can determine that certain other activities took place such as pre- and post-trip inspections, drops and hooks, and Qualcomm reports. BK, ¶¶ 10-22 and VPH**,** ¶¶ 14-15; Exs. 85-96 ¶ 5; *Ridgeway v. Wal-Mart Stores, Inc.,* 2016 WL 4529430, at *15-17 (N.D. Cal. 2016) ("*Ridgeway*"). From "settlement details" (pay stubs), the Court can determine the number of miles driven in a day and approximate the time spent driving such miles. Ex. 36. To the extent Defendant contends that the existing records are inadequate to determine liability and damages for early parts of the class period, that defense is common to all. *Villalpando v. Exel Direct, Inc.,* 2016 WL 1598663, at *15 (N.D. Cal. 2016). Class members can also identify themselves and their claims by claim forms. *Vaquero,* 824 F.3d at 1156 ("…the court could choose an option such as the use of

---

the driver's identification number, paycheck number, check date, pay period dates and gross and net pay, and, in the case of mileage-based drivers, the number of miles driven per day. Ex. 36. These records extend back to the beginning of the class period for the drivers. Exs. 55, 56. Defendant's satellite messaging records dating back to the beginning of the relevant time period show communications between the driver and fleet managers and dispatchers. Ex. 22; DP, 185:23-186:7. Such records include the dates and times of the communications as well as cities and states of stops. The dispatchers and fleet managers are also identified. DS ¶ 59, Ex. 57. Defendant's toll records show the dates, entries, exits, city and state of tolls that the drivers pass through. DS ¶ 60, Ex. 58 at tab 9098.

individual claim forms or the appointment of a special master, which plainly would allow Defendants to raise any defenses they may have to individual claims"); *Ridgeway*, 2016 WL 4529430, at *17.[20] Additionally, Defendant has the disclosure forms and background checks for each driver in their personnel files, as well as the model disclosure forms Defendant used throughout the FCRA Class Period. DS ¶¶ 4, 7, 13, 29, 34, 39-47, Exs. 2, 5, 11, 27, 32, 37-45. Thus, ascertainability would not be an issue here even *if* the Ninth Circuit had not rejected an ascertainability requirement for certification.

Plaintiff anticipates that Defendant will attempt to avoid the Ninth Circuit's holding in *Briseno* by casting what would have been its ascertainability argument as a challenge to the "manageability" of the action. Perhaps aware of that temptation, the Ninth Circuit provided a strong admonition in *Briseno* against manageability challenges:

> Moreover, as the Seventh Circuit has observed, requiring class proponents to satisfy an administrative feasibility prerequisite "conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Mullins v. Direct Dig., L.L.C.*, 795 F.3d at 663; *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (holding that refusal to certify a class "on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule' " (quoting *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980)), overruled on other grounds by *In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), and superseded by statute on other grounds as stated in *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). This presumption makes ample sense given the variety of procedural tools courts can use to manage the administrative burdens of class litigation. For example, Rule 23(c) enables district courts to divide classes into subclasses or certify a class as to only particular issues. Fed. R. Civ. P. 23(c)(4), (5); *see also In re Visa Check/MasterMoney*, 280 F.3d at 141 (listing "management tools available to" district courts).

---

[20] Defendant maintained data indicating the location of each load. Such data indicates the driver who handled each load. DS ¶ 6, Ex. 4. The load data can be used to track the drivers who either picked up or dropped off a load in California during the class period. *Id.* If the court determines that the drivers who worked in California are not ascertainable for the entire class period, the court can narrow down the class definitions to include the drivers who dropped off or picked up loads in California.

*Briseno*, 844 F.3d at 1128. There is no ascertainability issue here, whether expressly and improperly claimed, or cloaked in the guise of a "manageability" challenge.

### 4.   Class Action Treatment Is The Superior Means for Resolving the Claims of the Class Members.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Land Rover Jaguar NA, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("*Valentino*").[21] In making a superiority determination, some factors that this Court may consider, which are non-exhaustive, include: (A) the interest of potential class members in controlling the prosecution of separate actions; (B) the extent and nature of other litigation brought by other potential class members; (C) whether it would be desirable to concentrate all of their claims in a single forum; and (D) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3) (A)–(D).

A class action is vastly superior to separate individual civil lawsuits or wage claims with the Division of Labor Standards Enforcement in cases where the amounts at stake for each individual class member are relatively small and the putative class members have no interest in controlling the prosecution of separate individual actions. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616–17 (1997); *Gentry v. Superior Court,* 42 Cal.4th 443, 458-59 (2007). Moreover, a class action is superior to a representative PAGA action. A representative PAGA action offers far fewer benefits and a subsequent class action is almost inevitable because the judgment in the PAGA action has preclusive effect against the employer on the issues. *See Arias v. Superior Court*, 46 Cal.4th 969, 986-987 (2009) ("the one-way operation of collateral estoppel in this limited situation does not

---

[21] See also, *Local Joint Executive Bd. of Culinary/Bartenders Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Valentino,* 97 F.3d at 1235-1236 ("a class action is a superior method for managing litigation if no realistic alternative exists").

violate the employer's right to due process of law.")

Further, the trial of this case can be manageable as a class action. *See Ridgeway*, 2016 WL 4529430, at *17 (denying defendant's motion for decertification and holding that the trial of the class action was manageable and plaintiffs could prove damages "using a combination of hard data from Wal-Mart and, where Wal-Mart did not collect or keep such data, representative sampling.") Many of the issues are pure legal issues that apply across-the-board to all class members - some of which should be summarily adjudicated. The remaining classwide issues can be then efficiently tried. At trial, Plaintiffs can offer representative testimony, statistical sampling, and survey results from a selected group of class members to establish liability and damages instead of having each and every one of them testify at trial. *See e.g.*, *Sav-On Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 333 (2004); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014).[22] Further, recently, the U.S. Supreme Court held in *Tyson Foods,* 136 S. Ct. at 1046-1047, that statistical evidence may be permissible to establish classwide liability in an off the clock case. The Court found that this is especially true where the employer is responsible for a shortfall in recordkeeping. *Id.* at 1040.[23]

## VII.   ADDITIONAL SUBCLASSES FOR LABOR CODE §§ 226 AND 203

Certification of the classes defined in Plaintiffs' Notice of this motion will likely warrant additional subclasses of employees who received inaccurate or incomplete pay stubs and former employees with waiting time penalties claims. Lab. Code §§ 203 and

---

[22] Courts frequently award back wages under the Fair Labor Standards Act ("FLSA") to non-testifying employees based upon the representative testimony of a small percentage of the employees. *Bell v. Farmers Ins. Exch.*, 115 Cal.App.4th 715, 748 (2004) (incorporating federal standards); *see also Duran v. U.S. Bank Nat'l Assn.*, 59 Cal. 4th 1, 31 (2014) (explaining "[I]f sufficient common questions exist to support class certification, it may be possible to manage individual issues through the use of surveys and statistical sampling." *See also Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 444 (C.D. Cal. 2014).

[23] Denial of class certification for management reasons is generally disfavored. *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 140 (2nd Cir. 2001).

226; *Pineda v. Bank of America, N.A.,* 50 Cal.4th 1389, 1398 (2010). Plaintiffs allege that Defendant's Labor Code violations were willful, knowing, and intentional for several reasons,[24] including the *Dilts v. Penske Logistics, LLC,* 769 F.3d 637, 643-644 (9th Cir. 2014), cert. denied, 135 S. Ct. 2049 (2015) decision which stated that Federal Aviation Administration Authorization Act (the "FAAAA") did not preempt California wage and hour laws.[25]

Defendant also violated the rights of all drivers by failing to state the total hours worked on their pay stubs. Labor Code § 226 requires an employer to state on the itemized wage statement the number of piece-rate units and the total hours worked by the employee unless the employee is paid a salary <u>and</u> is exempt from overtime. *Id.*, § 226(a)(2). The mileage-based drivers received pay stubs ("settlement details") between December 2013 and the present that do not state their hours worked. DS ¶ 38, Ex. 36; DS ¶¶ 82, 83, Exs.

---

[24] It is well established that the meal and rest period laws are safety regulations. The meal and rest periods laws for the State of California have been well-established for many years. The meal and rest period laws in their current form since 1999. On July 20, 1999, California Governor Gray Davis signed into law the "Eight Hour Day Restoration and Workplace Flexibility Act of 1999" which went into effect on January 1, 2000. In addition to requiring overtime pay for work performed in excess of eight hours in a workday, the Act codified the right to a meal period (already required by Industrial Welfare Commission Wage Order) and also required a second meal period for workdays over 10 hours. In so doing, the Legislature acknowledged numerous studies that have linked long work hours to increased rates of accident and injury.

[25] Other courts have reached the same conclusion. *See e.g., Cardenas v. McLane Foodservices, Inc.,* 796 F.Supp.2d 1246, 1250-1253 (C.D. Cal. 2011) (which involved a competing trucking company utilizing very similar compensation practices); *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998); *Ridgeway*, 2016 WL 4529430, at *6 (holding that "the Ninth Circuit's reasoning in *Mendonca* and *Dilts* [applies]"); *People ex rel. Harris v. Pac Anchor Transportation, Inc.,* 59 Cal.4th 772, 777-78 (2014). Defendant ignored these decisions and failed to correct its practices. Further, several other employees of Defendant also sued Defendant for violations of California Labor code and for the same Labor Code sections (including minimum wage requirements) Plaintiff sued Defendant for. DS ¶¶ 76-77, Exs. 73-74. These lawsuits would put any reasonable Defendant on notice to investigate its potential violations.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

78-79. As such, Defendant violated § 226.

## VIII. <u>CONCLUSION</u>

For the reasons set forth above, this Court should grant Plaintiffs' motion in its entirety, certify each class, and direct that notice be given to class members. In the alternative, and especially if the Court is inclined to deny Plaintiffs' motion due to any perceived manageability issues, this Court should allow Plaintiffs to file a renewed motion for class certification or to simply supplement the record in support of his pending motion.[26]

Respectfully submitted,

**THE SPIVAK LAW FIRM**

Dated: April 9, 2018       By:  /s/ David Spivak
                                David Spivak

**SETAREH LAW GROUP**
Shaun Setareh
H. Scott Leviant

**LAW OFFICES OF LOUIS BENOWITZ**
Louis Benowitz

Attorneys for Plaintiffs

---

[26] If the court deems Plaintiff not suitable to represent certain classes or subclasses, the Court should allow Plaintiff to amend his complaint to add additional class representative(s).